UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------×

SOLANGE MARTINEZ,

                *Plaintiff*,

    v.

SKANSKA USA INC. *and* SKANSKA USA CIVIL
NORTHEAST INC.,

                *Defendants*.

------------------------------------------------------------------------×

**Case No. 15-cv-4618**

**FIRST AMENDED
COMPLAINT**

       Plaintiff Solange Martinez, by her counsel, The Harman Firm, PC, alleges for her complaint against Defendants Skanska USA Inc. and Skanska USA Civil Northeast Inc. as follows:

## PRELIMINARY STATEMENT

       1.    In this employment discrimination action, Plaintiff Solange Martinez ("Plaintiff" or "Ms. Martinez"), seeks damages and costs against Defendants Skanska USA Inc. and Skanska USA Civil Northeast Inc. (collectively "Defendants" or "Skanska") for: (i) gender and national origin hostile work environment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*. ("Title VII"); (ii) retaliation in violation of Title VII; (iii) gender, race, and national origin hostile work environment discrimination in violation of the New York City Human Rights Law, as codified at N.Y.C. Admin. Code § 8-101 *et seq*. ("NYCHRL"); (iv) retaliation in violation of the NYCHRL; (v) paying her less than her similarly situated male colleagues, in violation of the Fair Labor Standards Act as amended by the Equal Pay Act, as codified at 29 U.S.C. § 206 ("FLSA"); (vi) paying her less than her similarly situated male colleagues, in violation of the New York Labor Law § 194 ("NYLL"); and (vii) race

discrimination in violation of the Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981 ("Civil Rights Act").

## JURISDICTION AND VENUE

2.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as Defendants violated Plaintiff's rights under the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*.

3.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claim brought under state and local laws.

4.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred within this District.

5.     All conditions precedent to maintaining this action have been fulfilled.  A charge of discrimination was filed with the Equal Opportunity in Employment Commission ("EEOC"). The EEOC issued a Right-to-Sue Letter dated April 7, 2015 relating to the discriminatory acts described in this Complaint.  This action was properly instituted within ninety (90) days of the issuance of the Right-to-Sue Letter.

## TRIAL BY JURY

6.     Plaintiff respectfully requests a trial before a jury.

## PARTIES

7.     At all times relevant hereto, Plaintiff Solange Martinez was a resident of the County of New York, State of New York.

2

8.      At all times relevant hereto, upon information and belief, Defendant Skanska USA Inc. was a domestic business corporation organized and existing under the laws of the State of New York with its United States headquarters located at 350 Fifth Avenue, New York, New York, 10118.

9.      At all times relevant hereto, upon information and belief, Defendant Skanska USA Civil Northeast, Inc. was a domestic business corporation organized and existing under the laws of the State of New York with its United States headquarters located at 75-20 Astoria Boulevard, Suite 200, Queens, New York, 11370.

10.     Skanska AB is a multinational construction and development company, headquartered in the nation of Sweden.  Upon information and belief, Defendant Skanska USA Inc. is the U.S. subsidiary of Skanska AB; Defendant Skanska Civil Northeast Inc. is a subsidiary of Skanska USA Inc.

11.     Upon information and belief, Defendants are closely related entities with overlapping corporate structures.  Upon information and belief, Defendant Skanska USA Inc. exerts significant control over the operations of Skanska USA Civil Northeast, Inc. and the entities operate as joint employers.

## STATEMENT OF FACTS

### Background

12.     Plaintiff Solange Martinez was born in the Dominican Republic and is a Hispanic female.

13.     Ms. Martinez studied and received degrees in architecture, drafting and computer-aided design ("CAD") and worked as a CAD technician for approximately fourteen (14) years before her employment with Defendants.

14.     On or about October 20, 2008, Skanska's Human Resources Manager, Larry Bolyard, hired Ms. Martinez as a drafter, working as a structural drafter in construction projects.

15.     Ms. Martinez was assigned to Skanska's 7 Line Extension Project on the West Side of Manhattan, which she worked on for four (4) years.

16.     After the 7 Line Extension Project was completed in or around June 2012, Skanska transferred Ms. Martinez to another project, the Fulton Street Project, located in Lower Manhattan,.

**Equal Pay Act Claim**

17.     Defendants paid Ms. Martinez less than their similarly situated male employees during her tenure with Defendants.

18.     In and around October 2008, Ms. Martinez earned approximately $25.96 per hour with Skanska as a structural drafter for a construction project.

19.     In and around early 2009, Jose Padilla, Ms. Martinez's former co-worker, received a job offer from Skanska for approximately $35.00 per hour as a structural drafter for a construction project.

20.     As structural drafters for construction projects, Ms. Martinez and Mr. Padilla would have had jobs that required equal skill, effort, and responsibility performed under similar working conditions.

21.     Upon information and belief, all Defendants' structural drafters for construction projects were responsible for the same work and duties, which include, are but not limited to, creating plans and presentations, producing structural plans, interpreting quality control documents, and preparing as-build drawing sets.

22.     On or about June 27, 2010, Defendants changed Ms. Martinez's title from "drafter" to "engineer technician" without providing any reason for the change. Nonetheless, none of her duties or responsibilities changed.

23.     Every year, Ms. Martinez received raises. Her last wage was approximately $31.28 per hour, which was her rate of pay until the end of her employment with Defendants.

24.     Even with the foregoing described inconsequential incremental pay increases, her rate of pay remained less than similarly situated male employees.

25.     Further, Defendants' employees frequently told Ms. Martinez that Defendants paid male employees with less education, experience, and skills more than they paid Ms. Martinez.

26.     Defendants willfully underpaid Ms. Martinez relative to other structural drafters/engineer technicians for construction projects during her tenure with Skanska.

### Hostile Work Environment, Sexual Harassment, and Retaliation Claims

27.     Shortly after her transfer to the Fulton Street Project, Defendants' employees began to harass Ms. Martinez because of her race, national origin, and gender.

28.     During her transition to the Fulton Street Project, Ms. Martinez typically directed questions to her co-worker, Raphael Stewart. When Ms. Martinez asked Stewart a question, Aeran Doron, the Fulton Street Project Manager, made sneering faces, which made her feel

uncomfortable and unwelcomed, and discouraged her from asking necessary, work-related questions.

29.     In and around July 2012, Ms. Martinez asked Doron if he knew of any good Latin restaurants in the area near their work site. Doron angrily responded, "So you think I'm one of those people?" Doron was visibly offended by being associated with people of Hispanic origin.

30.     Upon information and belief, Aeran Doron is not Hispanic; he is of Israeli origin.

31.     Whenever Ms. Martinez spoke in front of Doron, he stopped her from talking by "shooing" her, in intentionally demeaning fashion, in front of her co-workers. Thereafter, other Skanska employees began imitating Doron's disrespectful behavior towards her. Upon information and belief, no other employees were treated in this manner.

32.     Ms. Martinez complained to Doron that his conduct towards her, motivated by her race and gender, was offensive and humiliating.

33.     After Ms. Martinez's complaint, Doron, together with Skanska's project manager, Norman Hirsch, and Ms. Martinez had a meeting to discuss Doron's behavior; however, Hirsch failed to do anything to discipline Doron or correct his behavior.

34.     In or around August 2012, an elderly Spanish-speaking woman, who did not speak English, fell near the worksite. Defendants' employees, Aeran Doron, John Marisak, and George Alarcon ridiculed the woman, making comments such as, "oh, the old cow can't speak English." When Alarcon saw that Ms. Martinez was upset by their comments, he then began mocking her, by snidely stating, in substance, "Be careful guys, we may be offending susceptible people."

35.     Ms. Martinez said nothing in response, as she was out-numbered, and also believed any effort to speak up would not only be futile, but also make her a target for further ridicule.

36.     On or about November 28, 2012, while Ms. Martinez was on the worksite, an electrician known only to Plaintiff as Steve, yelled to her saying, "Hello, problem."  A group of men laughed at her because of Steve's comment.

37.     Ms. Martinez asked Steve why he would disrespect her so.  Steve responded, in an intimidating tone, "Don't make me tell you something you don't want to hear."

38.     Shortly thereafter, Ms. Martinez conveyed to Alarcon what Steve had said to her and stated that she felt she was being singled out and mistreated because of her gender and race.

39.     Alarcon replied, in substance, that he did not believe Ms. Martinez, and that he did not want to hear anything further from her.

40.     In and around December 2012, Steve began to harass Ms. Martinez.

41.     Steve followed Ms. Martinez in the corridors of the office, threatening her in low voice with epithets such as "go back to your country" and "Dominican whore."

42.     Steve also physically intimidated Ms. Martinez.  For example, one time he stood in the middle of the office corridor, blocking her path, and intentionally tried to push her when she tried to pass by him.  Steve is significantly larger than Ms. Martinez, and his presence frightened her.

43.     Ms. Martinez complained of Steve's harassing and threatening behavior to Skanska; Skanska failed to do anything in response.

44.     In and around February 2013, Ms. Martinez again complained to her manager, Nir Golan, about the ongoing, almost daily mistreatment she experienced.  Rather than direct the co-workers to cease their illegal conduct; Golan instead chose to "remedy" the problem by instructing Ms. Martinez to stop asking her co-workers questions about work-related issues, effectively blaming her for their actions and further alienating her from her co-workers.

45.     Thereafter, Doron engaged in further efforts to alienate Ms. Martinez from her co-workers and individuals at the work-site.

46.     When new employees Patrick Torres and Andrew Janowski were placed on the Fulton Street Project, they treated Ms. Martinez respectfully; however, upon information and belief, Doron instructed them not to talk to her and encouraged them to join in the discrimination against her.

47.     By October 2013, Janowski joined Doron and other of Defendants' employees in regularly insulting Ms. Martinez.  Janowski humiliated Ms. Martinez by asking her in a singsongy tone, "How did you get into this country?" implying that she was an undesirable, undocumented immigrant because she was from the Dominican Republic.

48.     On or about June 28, 2013, Skanska held its monthly Clarity Net Training.  Ms. Martinez told Skanska's safety engineer, Nicholas Baldassarre, that she needed to take the training that day.  Immediately, another Skanska employee, whose name Ms. Martinez does not know, interrupted her, shouting "Sit here [pointing to his crotch] and take the training."  Ms. Martinez, shocked and offended by this blatant sexual harassment, asked him, "What did you say?" to which he responded, "Sit here [pointing to his crotch] and take this training."

49.     Baldassarre did nothing, pretending that nothing had happened.  Ms. Martinez, crying, immediately contacted Skanska's Human Resources Manager, Willis Erin, to report the offensive conduct.  Erin told Ms. Martinez that because it was Friday, she could not have a meeting until Monday.

50.     However, later that same day, June 28, 2013, Ms. Martinez was called to a meeting with Michael Attardo, Nir Golan and Norman Hirsch.  She complained about the extremely offensive above-described conduct by the co-employee earlier that day, and that it was a result of Skanska normalizing disrespect toward her in the workplace by not punishing any of the past wrongdoings.  She requested that she be relocated to a different project.

51.     Attardo refused Ms. Martinez's request but stated that the offending employee would be removed from the Project.

52.     Skanska never removed the employee in question from Ms. Melendez's project, and Ms. Melendez continued to encounter him in the workplace.

53.     In and around September 2013, Rui Silva, an employee very close to Attardo and Begonja, approached Ms. Martinez in the street, saying, "I know people like you, I know what women from the D.R. are," implying that Ms. Martinez, by virtue of being a woman from the Dominican Republic, was a prostitute.

54.     Over the course of Ms. Martinez's employment with Skanska, when she complained about the harassment, discrimination and hostile environment at the workplace, Skanska retaliated aggressively by allowing employees to continue to mistreat her in the field, and refusing to transfer her to another location.

9

55.     On or about November 8, 2013, Maggie Gaon, Skanska's Human Resources executive, abruptly terminated Ms. Martinez's employment because of her "conduct," and refused to provide her with a written reason for termination.

56.     Ms. Martinez asked Gaon when the decision to terminate her employment was made. Gaon replied, "several weeks ago." This places the decision during the time period that Human Resources purportedly was conducting an investigation regarding Ms. Martinez's complaints of race, national origin, and sex discrimination.

57.     Defendants' vague claim that Ms. Martinez was fired for "conduct" issues is an obvious pretext for Defendants' actual reason for terminating Ms. Martinez: her status as a Hispanic, Dominican woman, and retaliation for her repeated complaints of discrimination.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Gender and National Origin Discrimination in Violation of Title VII,
### 42 U.S.C. § 2000e *et seq.*

58.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 57 with the same force as though separately alleged herein.

59.     Title VII makes it unlawful to discriminate against any individual on the basis of gender and/or national origin with respect to the individual's compensation, terms, conditions, or privileges of employment.

60.     Defendants discriminated against Plaintiff because she was a female and from the Dominican Republic; Defendants' employees regularly insulted, intimidated, harassed, and demeaned Plaintiff because of single characteristics (i.e. gender or national origin) as well as composite characteristics (i.e. being a Dominican woman).

61.     Defendants have discriminated against Plaintiff with respect to the terms and conditions of her employment, including, but not limited to:

      a.   subjecting her to disparate treatment, physical intimidation and ridicule resulting in hostile work environment so severe and pervasive that it altered the terms, conditions and privileges of Plaintiff's employment;

      b.   sexual harassment; and

      c.   unlawfully terminating her employment in violation of Title VII.

62.     As a direct and proximate consequence of Defendants' illegal discrimination, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

63.     Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendants.

## SECOND CAUSE OF ACTION
### Retaliation in Violation of Title VII,
### 42 U.S.C. § 2000e *et seq.*

64.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 63 with the same force as though separately alleged herein.

65.     Title VII makes it unlawful to retaliate against any individual for asserting rights protected under Title VII.

66.     Plaintiff repeatedly complained to Defendants of the egregious discriminatory treatment she suffered in the workplace.

67.     Defendants retaliated against Plaintiff for making these complaints by, *inter alia*, terminating her employment.

68.     As a direct and proximate consequence of Defendants' illegal retaliation, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

69.     Defendants' treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendants.

### THIRD CAUSE OF ACTION
**Gender, Race, and National Origin Discrimination in Violation of the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.***

70.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 69 with the same force as though separately alleged herein.

71.     The NYCHRL mandates that no employer discriminate against an employee in compensation or in terms, conditions or privileges of employment on the basis of gender, race, and national origin.

72.     Defendants discriminated against Plaintiff because she was Hispanic, a woman, and from the Dominican Republic; Defendants' employees regularly insulted, intimidated, harassed, and demeaned Plaintiff because of single characteristics (i.e. gender, race, national origin) as well as composite characteristics (i.e. being a Hispanic, Dominican woman).

73.     Defendants have discriminated against Plaintiff with respect to the terms and conditions of her employment, including, but not limited to:

a.   subjecting her to disparate treatment, physical intimidation and ridicule resulting in a hostile work environment so severe and pervasive that it altered the terms, conditions and privileges of Plaintiff's employment;

b.   sexual harassment; and

c.   unlawfully terminating her in violation of the NYCHRL.

74.   As a direct and proximate consequence of Defendants' gender discrimination, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

75.   Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights under the NYCHRL, due to which Plaintiff is entitled to an award of punitive damages against Defendants..

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL,
### N.Y.C. Admin. Code § 8-101 *et seq.*

76.   Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 75 with the same force as though separately alleged herein.

77.   The NYCHRL prohibits employers from retaliating against an employee for asserting rights protected by the NYCHRL.

78.   Defendants retaliated against Plaintiff after she complained about race, national origin, and gender discrimination by, *inter alia*, terminating her employment.

79.   As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to,

13

loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

80.     Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

**FIFTH CAUSE OF ACTION**
**Unequal Pay in Violation of the FLSA,**
**29 U.S.C. § 206**

81.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 80 with the same force as though separately alleged herein.

82.     The FLSA prohibits employers from paying employees who perform substantially similar work, requiring substantially equal skill in substantially similar environments, disparately because of the employees' gender.

83.     Upon information and belief, Defendants paid Plaintiff a significantly lower hourly wage than her male structural drafter and/or engineer technician colleagues who performed substantially similar work.

84.     As a result of Defendants' illegal pay disparity, Plaintiff suffered economic injury during her employment with Defendants; Plaintiff seeks compensatory economic damages, liquidated damages, attorneys' fees, costs, and interest, as well as whatever remedy the Court deems proper.

**SIXTH CAUSE OF ACTION**
**Unequal Pay in Violation of NYLL,**
**New York Labor Law § 194**

85.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 84 with the same force as though separately alleged herein.

14

86.    NYLL prohibits employers from paying employees who perform substantially similar work, requiring substantially equal skill in substantially similar environments, disparately because of the employees' gender.

87.    Upon information and belief, Defendants paid Plaintiff a significantly lower hourly wage than her male structural drafter and/or engineer technician colleagues who performed substantially similar work.

88.    As a result of Defendants' illegal pay disparity, Plaintiff suffered economic injury during her employment with Defendants; Plaintiff seeks compensatory economic damages, liquidated damages, attorneys' fees, costs, and interest, as well as whatever remedy the Court deems proper.

**SEVENTH CAUSE OF ACTION**
**Race Discrimination in Violation of the Civil Rights Act,**
**42 U.S.C. § 1981**

89.    Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 88 with the same force as though separately alleged herein.

90.    Under 42 U.S.C. § 1981, racial discrimination in employment is illegal.

91.    Defendants subjected Plaintiff to pervasive, intolerable and humiliating discrimination on the basis of her race.

92.    Defendants' employees created a hostile work environment for Plaintiff by constantly assailing her with racially offensive language.

93.    In failing to correct the heinous inequality and discrimination, Defendants knowingly submitted Plaintiff to a hostile work environment, in violation of the Civil Rights Act.

94.    In further violation of the Civil Rights Act, Defendants terminated plaintiff because of her race, as, upon information and belief, the same managers and supervisors who

15

were openly hostile to Plaintiff because of her race also participated in the decision to terminate her.

95.     Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendants.

96.     As a result of Defendants' illegal discrimination, Plaintiff has suffered damages for past and future earnings. Additionally, Plaintiff seeks damages for attorney's fees, costs, and emotional injuries in an amount to be determined at trial.

### Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.     for the first claim, actual damages to be determined at trial, but in no event less than $1,000,000.00;

B.     for the second claim, actual damages to be determined at trial, but in no event less than $1,000,000.00;

C.     for the third claim, actual damages to be determined at trial, but in no event less than $1,000,000.00;

D.     for the fourth claim, actual damages to be determined at trial, but in no event less than $1,000,000.00;

E.     for the fifth claim, actual damages to be determined at trial, but in no event less than $400,000.00;

F.     for the sixth claim, actual damages to be determined at trial, but in no event less

       than $400,000.00;

G.     for the seventh claim, actual damages to be determined at trial, but in no event

       less than $1,000,000.00;

H.     an award of compensatory and punitive damages;

I.     pre-judgment and post-judgment interest;

J.     attorneys' fees and costs; and

K.     such other and further relief as the Court deems just and proper.


Dated:        New York, New York
              September 8, 2015

                                      By:    _____
                                             Ronnie L. Silverberg [RS-6881]
                                             Walker G. Harman, Jr. [WH-8044]
                                             THE HARMAN FIRM, PC
                                             *Attorneys for Plaintiff*
                                             1776 Broadway, Suite 2030
                                             New York, NY 10019
                                             (212) 425-2600
                                             rsilverberg@theharmanfirm.com
                                             wharman@theharmanfirm.com